**IN THE**

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

ANTHONY LAMONT GARDNER, JR.,

*Plaintiff - Appellant,*

v.

KENYATTA MOMON, *et al.*,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

**OPENING BRIEF OF APPELLANT**

Donna L. Biderman, Esq.
Law Office of Donna L. Biderman, PLLC
4015 Chain Bridge Road, Ste 38
Fairfax, Virginia 22030

(703) 966-5434 telephone
(888) 450-8569 fax
dbiderman@bidermanlaw.com

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1424__    Caption: __Gardner v. Momon et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Anthony L. Gardner_____
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: _____11/14/24_____

Counsel for: Appellant _____

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE ..................................................................... 2

Summary ............................................................................................. 2

Facts ............................................................................................. 2

The District Court's Order Granting Summary Judgment .................... 6

SUMMARY OF ARGUMENT .................................................................... 8

ARGUMENT ............................................................................................... 8

I.    STANDARD OF REVIEW .................................................................. 9
II.   THERE WERE SUFFICIENT MATERIAL FACTS IN DISPUTE
      SUCH THAT SUMMARY JUDGMENT WAS NOT
      APPROPRIATE ................................................................................. 10
III.  ALL COUNTS ALLEGING VIOLATIONS OF CIVIL RIGHTS
      (COUNTS I, III, AND V) WITHSTAND SUMMARY
      JUDGMENT BECAUSE THERE ARE GENUINE DISPUTES OF
      MATERIAL FACTS ........................................................................... 11

      A. Momon and Armel violated Mr. Gardner's Fourth Amendment
      Rights by using unreasonable force ................................................. 12

      B. Momon and Armel violated Mr. Gardner's Fourth Amendment
      Rights when they failed to intervene. .............................................. 19

      C. Momon and Armel are not entitled to qualified immunity as to
      Mr. Gardner's Fourth Amendment claims. ....................................... 21

IV.  THE COUNT ALLEGING VIOLATIONS OF MR. GARDNER'S
     FIRST AMENDMENT RIGHTS (COUNT VII) SURVIVES
     SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE
     DISPUTES OF MATERIAL FACT. ......................................................23

V. MR. GARDNER'S STATE LAW CLAIMS (COUNTS II, VIII, AND
     IX) WITHSTAND SUMMARY JUDGMENT. .....................................27

VI.  COUNT  I  AGAINST  THE  COUNTY  WITHSTANDS
     SUMMARY JUDGMENT BECAUSE MR. GARDNER HAS
     ESTABLISHED  THAT  THE  COUNTY'S  CUSTOMS
     COMMANDED A CONSTITUTIONAL VIOLATION. ........................31

CONCLUSION .........................................................................................34

STATEMENT REGARDING ORAL ARGUMENT .............................................35

CERTIFICATE OF COMPLIANCE .......................................................36

CERTIFICATE OF SERVICE ..............................................................36

# Table of Authorities

## Cases

*Adams v. Commonwealth*, 33 Va. App. 463 (2000) ............................................. 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................... 8-9

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516 (2002) ................................................ 23

*Blankenship v. Commonwealth*, 71 Va. App. 608 (2020) ............................... 27, 28

*Brown v. Lott*, No. 21-6928, 2022 U.S. App. LEXIS 16022 (4th Cir. June 10, 2022) ................................................................................................................................ 10

*City of Tahlequah v. Bond*, 142 S. Ct. 9 (2021) ................................................. 22

*Clem v. Corbeau*, 284 F.3d 543 (4th Cir. 2002) ................................................. 12

*Cnty. of L.A. v. Mendez*, 198 L. Ed. 2d 52 (2017) .............................................. 12

*Davidson v. Allam*, 143 Va. 367 (1925) ......................................................... 14-15

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639 (4th Cir. 2002) .... 9, 18

*E.W. v. Dolgos*, 884 F.3d 172 (4th Cir. 2018) .................................................... 12

*Ford v. City of Newport News*, 23 Va. App. 137 (1996) .................... 25, 24, 25, 26

*Graham v. Connor*, 490 U.S. 386 (1989) ....................................................... 12, 13

*Harris v. Pittman*, 927 F.3d 266 (4th Cir. 2019) ............................................ 14, 23

*Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) ........... 24

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) .................................................. 13

*Lozeman v. City of Rivera Beach*, 138 S. Ct. 1945 (2018) .................................. 23

*McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307 (4th Cir. 2014) .............. 9

*Meyers v. Balt. Cnty.*, 713 F.3d 723 (4th Cir. 2013) ........................................... 21

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ......................................................... 24

*Parker v. McCoy*, 212 Va. 808 (1972) ................................................................ 14

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................... 21, 22

*Randall v. Prince George's Cnty.*, 302 F.3d 188 (4th Cir. 2002) ........................ 19

*Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994) .................................................. 13

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................... 21, 22

*Shover v. Chestnut*, 798 F. App'x. 760 (4th Cir. 2020) ......................................... 9

*Sims v. Labowitz*, 885 F.3d 254 (4th Cir. 2018) ................................................. 21

*Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015) ....................................................... 12, 13

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) ............................ 23

*United States v. Moore*, 332 F. Supp. 919 (E.D. Va. 1971) ...................... 15, 16, 17

*Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005) (per curiam) ............. 13-14, 14

*Wingate v. Fulford*, 987 F.3d 299 (4th Cir. 2021) ................................................. 21

## Statutes

28 U.S.C. § 1291 ........................................................................................................ 1

28 U.S.C. § 1331 ........................................................................................................ 1

28 U.S.C. § 1391 ........................................................................................................ 1

28 U.S.C. § 2107 ........................................................................................................ 1

42 U.S.C. § 1983 ..................................................................................... 1, 19, 28, 29

Va. Code Ann. § 18.2-415 ....................................................................................... 24

## Rules

Fed. R. App. P. 32 .................................................................................................... 36

Fed. R. Civ. P. 56 ......................................................................................... 8, 10, 11

## **STATEMENT OF JURISDICTION**

Plaintiff-Appellant Anthony Gardner sued Defendants-Appellees Kenyatta Momon, Thomas Armel, and County of Fairfax, under 42 U.S.C. § 1983, and for violations of the First, Fourth, and Fourteenth Amendments, in the U.S. District Court of the Eastern District of Virginia. The action also alleged statutory and common law violations of the law of the Commonwealth of Virginia, with ancillary jurisdiction in the Eastern District of Virginia. Federal jurisdiction in the district court was conferred by 28 U.S.C. § 1331 and 1343. Venue was proper pursuant to 28 U.S.C. § 1391. On April 9, 2024, the Honorable Patricia Tolliver Giles, granted the Defendants-Appellees' Motion for Summary Judgment on all counts and dismissed the action, which was a final order disposing of the case.

Pursuant to 28 U.S.C. § 1291, the Fourth Circuit Court of Appeals has jurisdiction over the final decision of the district court. Under 28 U.S.C. § 2107, and Rule 4 of the Federal Rules of Appellate Procedure, the Plaintiff-Appellee had thirty days to timely file his notice of appeal. Plaintiff-Appellant timely filed his Notice of Appeal on May 8, 2024.

This appeal follows.

**I.    Did the district court err when it granted summary judgment even though there were genuine disputes regarding material facts?**

## STATEMENT OF THE CASE

*Summary*

This case arises from an incident on October 30, 2021, when Fairfax County Police Department ("FCPD") Officers Kenyatta Momon ("Momon") and Thomas Armel ("Armel"), in uniform and while on duty, responded to a 911 call from Gardner asking for help. Momon and Armel decided to arrest Gardner, tackled him, held him virtually immobilized, and Momon hit him in the face twice, while repeatedly signifying that the battery was in retaliation for Momon's and Armel's beliefs that Gardner hit Momon in the face while being tackled. The officers held him in such a way that he was unable to breathe and was choking and wheezing. After the officers had arrested Gardner and handcuffed him, they moved him outside the store where the arrest had occurred, and Momon battered and injured Gardner further. The entire event was caught on the police officers' body-worn cameras, which footage is part of the record. JA550, at 00:29-4:16; JA554, at 1:00-2:45.

*Facts*

On October 30, 2021, Mr. Gardner called 911 and asked for assistance from the police because he was anxious and needed help to obtain shelter. JA429. He

stayed on the phone with the call center until Defendant Officers Momon and Armel, along with other officers, arrived. JA430. When Momon and Armel and other officers arrived, they did not assist Mr. Gardner, but rather turned to the store manager and asked her, "what do you want us to do with him?" JA550, at 0:50-1:33. The store manager responded, "ban him." Momon said, "okay, that sounds good." Mr. Gardner, who was at the cash register checking out a bottle of water, verbally acquiesced, but asked how the store manager had the authority to ban him. *Id.* The store manager responded, "this is my store, sir, and you are banned." Mr. Gardner responded, "this is not your store. This is my land, bitch. What the fuck are you talking about…." JA550, 1:34-1:46. Momon called to his partner, and Armel approached Plaintiff and tried to grab for his arm. Mr. Gardner took a few steps backward. Armel said, "disorderly conduct, right?" and then Momon stated, "you're about to go to jail, Slim. Hey, Slim, you're about to go to jail. Hey, what you trying to do? You trying to go to jail or what?" JA550, 1:38-2:00. Armel reached his left hand towards his weapon. Afraid for his safety because he had been battered by police before, Mr. Gardner pulled out his phone to record the incident. JA429-430. Armel rushed at Mr. Gardner, grabbing at him, and briefly succeeded. Momon rushed to join in. Together, they tackled Mr. Gardner to the ground. JA550, at 1:48-2:00.

Within twelve seconds of Armel moving towards Mr. Momon, Mr. Momon was pinned to the ground on his side, restrained and subdued. JA550, 1:48-2:00. Armel was straddled over Mr. Gardner, and was holding onto Mr. Gardner with both his hands. Momon had his left hand on Mr. Gardner's face and/or neck. Mr. Gardner was unable to move much as he was pinned down by both officers. *Id.*; *see also* JA429-430.

As Mr. Gardner lay restrained on the ground, unable to move, and secured by Momon and Armel, Momon hit or punched Mr. Gardner in the face, at the same time saying, "you [inaudible] me in the face? Huh?" JA550, 2:00-2:12. Mr. Gardner held his left hand defensively in front of his face to ward off the officer's blows. Momon then said to Mr. Gardner, "move your hand. Move your hand. You punched me in the fucking face?" Momon grabbed Mr. Gardner's left hand, which he was holding defensively in front of his face, and pulled it out of the way. Momon gave Mr. Gardner's hand to Armel, who held Mr. Gardner's hand out of the way. Mr. Gardner said, "how are you going to hit me, I'm on the fucking…" and the rest of the sentence was cutoff when Momon hit or punched Plaintiff in the face another time. Momon then said, "you [inaudible] me in the face? What the fuck is wrong with you? What the fuck is wrong with you?" Mr. Gardner started to say, "what the fuck is wrong…" but he was being choked by Momon's and/or Armel's hands holding him down and could not finish the sentence. Mr. Gardner instead ended up

audibly choking, wheezing, and gasping for breath. *Id.* One or both of Momon and Armel were choking Mr. Gardner as he lay on the ground.

Momon then said, "put your hands behind your back. Put your hands behind your back," as both Momon and Armel forced Mr. Gardner onto his stomach and started handcuffing him. JA550, 2:15-2:30. Mr. Gardner managed to wheeze out, "I can't breathe." Momon replied, "I don't give a shit what the fuck you are talking about." Plaintiff apologized several times, saying, "don't hit me again," and "my hands are behind my back." Defendant Momon responded, "fuck you, man," and "what the fuck is you talking about." *Id.* Mr. Gardner cried out, "they're trying to kill me!" and "I can't breathe" multiple times while being held on the ground handcuffed. At this point, Mr. Gardner was handcuffed, and on the floor. He had submitted to the authority of the police officers. He was not fighting the officers or attempting to evade custody. He was under arrest and in the custody and control of the police officers. The situation calmed down.

Other officers arrived on the scene and both Momon and Armel moved away from Mr. Gardner. Momon left the store alone, telling multiple police officers that he was "good." JA550, 2:30-3:30. Approximately two and a half to three minutes after Mr. Gardner was arrested, two police officers (not Momon or Armel) escorted Mr. Gardner out of the Shoppers and towards the general vicinity of where Momon was standing. JA554 at 1:00-2:45. Mr. Gardner apologized to Momon, who

responded by telling Mr. Gardner to "shut the fuck up," "don't talk to me," and "you're a bitch." *Id.*

The two officers who were escorting Mr. Gardner brought him near a wall to get him to sit down. JA554, at 1:00-2:45. Momon moved forward to get closer to Mr. Gardner and told him to sit down. Mr. Gardner, with his hands cuffed behind his back and his back to a brick wall, said, "how the fuck I'm to sit down?" Momon said, "sit down, that's the fuck why," as he used his hands and/or his feet to sweep Mr. Gardner's feet out from under him and force him to the ground. When Mr. Gardner hit the ground, Momon (a large police officer) put his weight on Mr. Gardner's leg. Mr. Gardner started yelling in pain and again crying out, "they are trying to kill me." As Momon held Mr. Gardner down, Mr. Gardner cried out in pain, "ah, my fucking leg, you're bending my knee the wrong way, my knee does not bend that way, fuck." He continued crying out in pain, telling Momon that he was crushing Mr. Gardner's leg, that his leg was hurting, and that his knee did not bend that way. Eventually Momon got off Mr. Gardner's leg and the officers stood Mr. Gardner up. *Id.* At this point the battery ended.

*The District Court's Order Granting Summary Judgment*

The district court granted summary judgment on all counts on April 9, 2024. The district court prefaced its Order with the statement that "[g]iven the proximity of the upcoming trial, the Court issues its ruling on summary judgment today and

intends to issue a more fulsome opinion in the future." JA542. The district court held

that:

> Having reviewed the Motion and the evidence in the record before the Court, including the body-worn camera footage, the Court concludes that Defendants have shown that there is no genuine dispute of material fact that Defendant Officers acted as reasonable officers would in the circumstances that confronted them. Plaintiff fails to show a genuine dispute of material fact that would permit a factfinder to conclude that Defendant Officers acted with excessive force. Thus, Defendant Officers are entitled to summary judgement as to the excessive-force Fourth Amendment claims.

JA543. The district court further held that:

> Defendants have shown that there is no genuine dispute of material fact that Defendant Officers had probable cause to arrest Plaintiff for disorderly conduct given Plaintiff's conduct in the store as demonstrated by the uncontroverted evidence in the record and the grand jury's return of an indictment. Plaintiff fails to point to any evidence that shows a genuine dispute of material fact that would permit a factfinder to conclude otherwise. Thus, there is no genuine dispute as to whether Defendant Officers acted in violation of the First Amendment. For these reasons, Defendant Officers are entitled to qualified immunity and to summary judgment on Counts I, III, VI, and VII.

JA541. Additionally, the district court held that "because the Court has determined

that Defendant Officers are entitled to summary judgment on the excessive-force

claim alleged in Count I, the Court also grants summary judgment for Fairfax County

as to Plaintiff's generalized-custom claim in Count 1." JA544-545. Finally, the

district court held that:

> Since there is no genuine dispute of material fact that Defendant Officers used reasonable force, summary judgment is therefore

> appropriate as to Plaintiff's claims of battery and gross negligence
> under Counts II and IX. As to his claim of intentional infliction of
> emotional distress, Plaintiff fails to show a genuine dispute of material
> fact that he suffered distress so severe that no reasonable person could
> endure it. Summary judgment is appropriate as to Count VIII as well.

JA 545. Thus, the district court granted summary judgment to the Defendants-Appellees on Counts I, III, V, VII, and VIII – all the counts that had survived an earlier motion to dismiss – and dismissed the case in its entirety. JA545-546. The district court's short five-page Order did not discuss why it discounted all of the facts that the Plaintiff-Appellant argued were in dispute and did not explain its findings any further. It should be noted that, contrary to the district court's stated intent, no "more fulsome opinion" was issued "in the future." *See* JA 542.

## SUMMARY OF ARGUMENT

The district court erred when it granted summary judgment for the Defendants-Appellees because there were sufficient material facts in dispute that summary judgment was not appropriate. The case should have gone to trial.

## ARGUMENT

The district court erroneously granted summary judgment. Since there were material facts in genuine dispute, the Defendants-Appellees were not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Viewing the evidence in the light most favorable to Mr. Gardner, as this Court must, there is sufficient disagreement that the case must be submitted to a jury. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52 (1986); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (The evidence must be viewed "in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor.").

## I. STANDARD OF REVIEW

This Court will "review an award of summary judgment *de novo,* drawing reasonable inferences in the light most favorable to the non-moving party." *Shover v. Chestnut,* 798 F. App'x. 760, 761 (4th Cir. 2020). "Summary judgment is appropriate 'if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)). Initially, the moving party must demonstrate that there are no disputed facts that are material to the disposition of the case. The relevant inquiry on summary judgment is whether the evidence "'presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014)

If the moving party meets its burden, then the non-moving party must demonstrate that a genuine dispute exists that should go to trial. *Shover,* 798 F. App'x. at 761. "The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment; rather 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" (citations omitted). *Id.*

The Fourth Circuit will "review[] the district court's grant of summary judgment *de novo,* applying the same legal standards as the district court…" *Brown v. Lott*, No. 21-6928, 2022 U.S. App. LEXIS 16022, at \*1-2 (4th Cir. June 10, 2022).

## II. THERE WERE SUFFICIENT MATERIAL FACTS IN DISPUTE SUCH THAT SUMMARY JUDGMENT WAS NOT APPROPRIATE

All the counts of the Amended Complaint had sufficient material disputes that they should have withstood summary judgment. Fed. R. Civ. P. 56(a). Viewing the evidence in the light most favorable to Mr. Gardner, Defendants-Appellees were not entitled to judgment as a matter of law on any count. *See id.*

This case involves two police officers who battered a civilian. The entire event was caught on the police officers' body-worn cameras, which footage is part of the record. JA550, at 00:29-4:16; JA554, at 1:00-2:45. On the one hand, Defendants-Appellees claimed that Mr. Gardner was resisting arrest and that they used reasonable force on Mr. Gardner to control him and to effectuate his arrest. On the other hand, Mr. Gardner claimed that, even if he had been resisting arrest earlier, he was not resisting arrest and had succumbed to Defendants-Appellees' authority prior to the battery. JA550, at 00:29-4:16, JA431-432. Mr. Gardner argued that Momon and Armel held him down so that Momon could punch him in the face in retaliation for his claim that Mr. Gardner had earlier punched him. JA550, at 2:00-2:12 (Momon and Armel holding Mr. Gardner on the ground while Momon yells at Mr. Gardner

for having punched him, and then punches him in retaliation). Momon and Armel then moved Mr. Gardner's hand away so that Momon could punch him again in the face, while Mr. Gardner stated that he was restrained and not resisting. *Id.* Momon and Armel also choked Mr. Gardner while he was restrained. *Id.,* at 2:15-2:23. Later, Mr. Gardner was moved out of the Shoppers and battered again by Momon. JA554, at 1:00-2:45. Momon acted out of retaliation and malice, as evidenced by his statements to other police officers. *See* JA550, at 11:48-11:53, 14:24-14:45. The parties have vastly different views of what happened. Clearly, this is a question of fact for the jury, and not appropriate for summary judgment.

Defendants-Appellees' argument that they are entitled to summary judgment is premised on their view of the facts that Mr. Gardner was resisting arrest at the time that time that he was battered by the officers. Mr. Gardner maintains that, even if he was resisting arrest at one point, he had ceased resisting and was controlled by the officers at the point he was punched in the face by the officers and later when he was battered outside. This is the central question in this case and is a factual question that needs to be resolved by a jury.

### III. ALL COUNTS ALLEGING VIOLATIONS OF CIVIL RIGHTS (COUNTS I, III, AND V) WITHSTAND SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE DISPUTES OF MATERIAL FACTS

Defendants-Appellees' argument that they are entitled to summary judgment on the counts alleging violations of Mr. Gardner's civil rights is premised entirely

on their argument that Momon and Armel used reasonable force to arrest Mr. Gardner. They completely ignore the fact that Mr. Gardner had succumbed to Momon and Armel's authority and was not resisting when Momon and Armel battered him, and that Momon and Armel battered Mr. Gardner in retaliation and not as part of a lawful arrest. These are disputed questions of material fact, and thus are jury questions not liable to summary judgment.

### A. Momon and Armel violated Mr. Gardner's Fourth Amendment Rights by using unreasonable force.

Using more force in an arrest than is objectively reasonable violates the Fourth Amendment. "Indisputably, the Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force against a free citizen…." *Clem v. Corbeau*, 284 F.3d 543, 549-50 (4th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The standard for excessive force claims is objective reasonableness. *Id.* at 550; *see E.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). This is judged by the facts and circumstances confronting the officers when the force was used. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Smith v. Ray*, 781 F.3d 95, 100-01 (4th Cir. 2015). To judge the force in the Fourth Amendment context, the factfinder balances the individual's interests against the relevant government interests. *Cnty. of L.A. v. Mendez*, 198 L. Ed. 2d 52, 60 (2017); *Graham*, 490 U.S. at 396; *Smith*, 781 F.3d at 101.

In the Fourth Circuit, the balancing test uses the following three common *Graham* factors: (1) the severity of the crime at issue – judged by the actions constituting the crime; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Smith*, 781 F.3d at 101. When these three factors favor a plaintiff, the force is unreasonable. *E.g., Smith,* 781 F.3d at 102; *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Cromartie,* 298 Va. At 302-03. However, these factors are not exclusive. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Instead, the overarching test is whether the force was proportional in light of the circumstances. *Smith,* 781 F.3d at 101.

Importantly, the amount of force which is reasonable can change during an encounter. "[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) (citing *Abraham v. Raso*, 183 F.3d 279, 294 (3rd Cir. 1999) (Holding that whether force was justified was a jury question not appropriate for summary judgment where the situation changed and the risk to the police officer passed); *Dickerson v. McClellan*, 101 F.3d 1151, 1162 n.9 (6th Cir. 1996) (Holding that analyzing separate segments of a single encounter may be appropriate if "the officers' initial decision to shoot was reasonable under the circumstances but there was no need to continue shooting"); *Ellis v. Wynalda*, 999

F.2d 243, 247 (7th Cir. 1993) (Holding that force was justified when officer was in danger but not justified as soon as the danger passed); *Bates ex rel. Johns v. Chesterfield County*, 216 F.3d 367, 371-72 (4th Cir. 2000) (Considering force used "at every stage of the … incident" is appropriate); *Hopkins v. Andaya*, 958 F.2d 881, 886-88 (9th Cir. 1992) (*per curiam*) (Dividing several-minute encounter into two segments and holding that even if the first application of force was constitutional, the second may not have been).

In *Waterman,* the Fourth Circuit held that once the threat to the officers' safety had passed, force was no longer justified. "[A] reasonable factfinder could determine that any belief that the officers continued at that point to face an imminent threat of serious physical harm would be unreasonable." *Id.* at 482. Similarly, in *Harris v. Pittman,* the Fourth Circuit held that circumstances had changed and that the same level of force was no longer reasonable. *Harris v. Pittman*, 927 F.3d 266, 279-80 (4th Cir. 2019). In that case, the Fourth Circuit reversed the grant of summary judgment because, even if deadly force was appropriate at the beginning of the interchange, circumstances changed and deadly force was inappropriate once the plaintiff no longer posed an immediate threat. *Id.*

While an officer has the right to use objectively reasonable force to make a lawful arrest, use of unreasonable force supports a claim for assault and battery. *See Parker v. McCoy*, 212 Va. 808, 813 (1972); *Davidson v. Allam*, 143 Va. 367, 380

(1925). A person may use reasonable force to defend themselves against unlawful force and an illegal arrest. *E.g.*, *United States v. Moore*, 332 F. Supp. 919, 902-21 (E.D. Va. 1971).

Here, Defendants-Appellees used unreasonable force. *First,* Defendants-Appellees did not have probable cause to arrest Mr. Gardner. Mr. Gardner, as shown *supra* at II, was exercising his First Amendment right to free speech. At a minimum, whether Defendants-Appellees had probable cause to arrest Mr. Gardner is a question for the jury and not appropriate for summary judgment.

*Second,* even if they had probable cause to arrest Mr. Gardner, Defendants-Appellees used force beyond what was reasonable to arrest Mr. Gardner for disorderly conduct. Armel reached for his sidearm, then grabbed at Mr. Gardner and tackled him. JA550, at 1:44-1:51. This is far beyond what is reasonable for misdemeanor disorderly conduct. Defendants-Appellees claim that Mr. Gardner assaulted them and that force was necessary. Mr. Gardner claimed that he reacted to Armel's threat and protected himself from unlawful force and an illegal arrest when he punched Armel. JA430-31. Mr. Gardner stated that he did not know that Momon was a police officer and why Momon was grabbing him, and that he was justified in punching Momon to protect himself. *Id.* Under these circumstances, whether Defendants-Appellees used reasonable force is a question for the jury and not appropriate for summary judgment.

*Third,* even if the force was reasonable at the beginning of the encounter, it was no longer reasonable once the Defendants-Appellees pinned Mr. Gardner to the ground and he was no longer a threat. JA550, at 2:00-2:10. Mr. Gardner was virtually immobile and could not have been a threat to Defendants-Appellees. *Id.; see also* JA431. The force of which Mr. Gardner principally complains occurred *after* he was pinned to the ground and virtually immobile. The reasonableness of the force must thus be determined as of that point and later. Circumstances had changed and any force at that point was unreasonable.

*Fourth,* it is clear from Momon's own statements that Momon punched Mr. Gardner in the face multiple times not to effectuate the arrest but rather in retaliation for his belief that Mr. Gardner had punched him. It is axiomatic that retaliation never constitutes justifiable force. Momon said, "you [inaudible] me in the face? Huh?" as he punched Mr. Gardner in the face. JA550, at 2:00-2:12. Momon then said, "move your hand," and Momon and Armel moved Mr. Gardner's hand (which was in a defensive position) away from his face so that Momon could better hit Mr. Gardner. Mr. Gardner cried out, "how are you going to hit me, I'm on the fucking…" as Momon again railed at him, "you [inaudible] me in the face? What the fuck is wrong with you? What the fuck is wrong with you?" just before Momon punched Mr. Gardner a second time in the face. *Id.* Momon's own statements show

that he was punching Mr. Gardner in retaliation and not to effectuate an arrest.[1] At the very least, Momon's motivation is a question for the jury and not appropriate for summary judgment.

*Fifth,* Defendants-Appellees do not address the fact that Mr. Gardner complains that Defendants-Appellees battered him when they choked him. JA432. Mr. Gardner was choked by Defendants-Appellees' hands holding him down and he was audibly choking, wheezing, and gasping for breath because one or both of the police officers were choking Mr. Gardner as he lay on the ground. JA550, 2:00-2:14. Mr. Gardner could not breathe because of how the police officers were holding him down. *Id.;* JA432. Defendants-Appellees claim that Mr. Gardner was not actually having trouble breathing. At the very least, this is a question for the jury and not appropriate for summary judgment.

*Sixth,* Defendants-Appellees battered Mr. Gardner outside the Shoppers when Momon pulled his leg out and placed his weight on Mr. Gardner's leg in such a way that Mr. Gardner was crying out in pain. JA554, at 1:00-2:45. This battery ended up injuring Mr. Gardner to such an extent that his leg will never be the same. Mr. Gardner was in handcuffs and was certainly not a threat to any officers at that

---

[1] Momon bragged to other police officers, "I'm a fighter, man.... [Mr. Gardner] was on the ground.... He was hitting me and I was like, oh, Mo'fucker, you hitting me? Bam! Move your fucking hand. Bam!" Momon explained his motivation to other police officers, saying, "he hit me in the face, I'm like, no, not the face. Nope. Nope. Nope." JA550, at 11:48-11:53, 14:24-14:45.

time. JA432. As such, Defendants-Appellees' use of force on Mr. Gardner was unreasonable. At the very least, this is a jury question not appropriate for summary judgment.

Of course, when considering a motion for summary judgment, this Court will take the facts most favorable to the non-moving party and draw all reasonable conclusions therefrom. *Dennis*, 290 F.3d at 645. Taking the facts most favorable to Mr. Gardner, the Court must conclude that:

- Mr. Gardner was not behaving in a disorderly way but rather expressing his right to free speech;
- Mr. Gardner was not threatening the store manager;
- Mr. Gardner was afraid of Armel when Armel reached for his sidearm then tried to grab Mr. Gardner;
- Mr. Gardner hit Armel to stop an illegal arrest and unlawful force, and to protect himself from harm;
- Mr. Garder did not know that Momon was a police officer and did not think that Momon had any right to grab him but felt he had a right to defend himself;
- Defendants-Apellees held Mr. Gardner virtually immobile on the ground so that Mr. Gardner was no longer a threat;
- When pinned to the ground, Mr. Gardner was not resisting arrest;
- Momon punched Mr. Gardner twice when Mr. Gardner was not resisting arrest;
- Momon punched Mr. Gardner out of retaliation for Mr. Gardner having hit him;
- Mr. Gardner was choking, wheezing, gasping for breath and unable to breathe properly because of how Momon and Armel pinned him to the floor;
- Outside Shoppers, Momon pulled Mr. Gardner's leg out, then knelt on it, causing Mr. Gardner great pain;
- While Momon was kneeling on Mr. Gardner's leg, it was bent the wrong way;

- Momon's actions outside the Shopper's caused Mr. Gardner to cry out in pain and beg Momon to get off his leg; and
- Mr. Gardner was injured by Momon's kneeling on his leg.

Taking the facts most favorable to Mr. Gardner and drawing all conclusions therefrom, as is appropriate on summary judgment, Mr. Gardner has alleged sufficient facts to withstand summary judgment. Summary judgment should have been denied.

### B. Momon and Armel violated Mr. Gardner's Fourth Amendment Rights when they failed to intervene.

Momon and Armel were required to intervene to stop each other's battery of Mr. Gardner and their failures to do so violated Mr. Gardner's Fourth Amendment rights as alleged in Counts III and V of the Amended Complaint. "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002).

As shown *supra* at I(A), Mr. Gardner's claims for excessive and unreasonable force survive summary judgment. Defendants-Appellees claim that both Momon and Armel thought the other was acting reasonably, but that is insufficient. A reasonable officer would have known that an officer hitting a suspect who is restrained and not resisting violates the suspect's constitutional rights. It is against relevant law, violates police department policy, and is contrary to common sense,

for an officer to be allowed to hit a suspect who is not currently resisting and does not pose a threat to the officers' safety. Momon's own words preceding each of his punches to Mr. Gardner's head show that he was punching Mr. Gardner in retaliation. Momon's and Armel's pulling Mr. Gardner's hand away from its defensive posture protecting his face so that Momon could more easily punch Mr. Gardner in the face again was clearly unreasonable. Mr. Gardner's statement that he was on the ground and not resisting also would lead a reasonable police officer to the conclusion that he could not continue to punch Mr. Gardner in the face. It is thus clear that both officers violated Mr. Gardner's constitutional rights and the other knew or should have known such.

Both officers had a reasonable opportunity to stop the other. Armel could have stopped Momon from punching Mr. Gardner in the face and could have stopped Momon from moving Mr. Gardner's hand away from his face so that Momon could better punch Mr. Gardner. Likewise, Momon could have stopped Armel from moving Mr. Gardner's hand away from his face. Both officers chose not only not to stop the other, but also to be involved in the battery himself.

Taking the facts most favorable to Mr. Gardner, and drawing all reasonable inferences therefrom, both Momon and Armel violated Mr. Gardner's Fourth Amendment rights by failing to intervene to stop the other from battering Mr. Gardner. Counts III and V should have survived summary judgment.

**C.    Momon and Armel are not entitled to qualified immunity as to Mr. Gardner's Fourth Amendment claims.**

The doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Wingate v. Fulford*, 987 F.3d 299, 310-11 (4th Cir. 2021). The burden of establishing a qualified immunity defense is on the official asserting qualified immunity. *Wingate,* 987 F.3d at 311; *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013).

The Supreme Court, in *Saucier v. Katz,* created a two-step procedure for resolving qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must decide if the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. *Id.* Second, a court then decides if the right was "clearly established." *Id.* A constitutional right is clearly established "not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked." *Sims v. Labowitz,* 885 F.3d 254, 263 (4th Cir. 2018) (*citing Clem v. Corbeau,* 284 F.3d 543, 553 (4th Cir. 2002). The central question is whether it would be clear to a reasonable officer that their conduct was unlawful in the particular situation that they found themselves in. *Livingston v. Kehagias,* 803 Fed. App'x 673, 678 (4th Cir. 2020).

Under *Pearson v. Callahan,* the Supreme Court has held that this two-step procedure is no longer mandatory but is "often appropriate." *Pearson*, 555 U.S. at 236.

Here, Mr. Gardner stated a plausible claim against the Defendants-Appellees for the violation of his constitutional rights. As shown *supra* at I(A), the level of force used on Mr. Gardner was unreasonable. At the very least, Mr. Gardner alleged facts sufficient for a jury to consider whether the level of force was unreasonable.

Since Mr. Gardner has made a plausible claim for a violation of a constitutional right, the next question is whether the right was clearly established at the time of the violation. *Saucier,* 533 U.S. at 201. Specifically, "the rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). This Court, in considering whether qualified immunity shields police officers from charges of unreasonable force when the force necessary has changed, has held that:

> Since 2005, it has been established that 'an imminent threat of serious physical harm to an officer is not sufficient to justify the employment of deadly force seconds after the threat is eliminated if a reasonable officer would have recognized when the force was employed that the threat no longer existed.' Six years later, in *Brockington*, we held that the *Waterman* rule was sufficiently specific to 'clearly establish[]' the right of a suspect, once shot by an officer and lying wounded on the ground, not to be shot again. And although an exact factual match is not required to overcome a qualified immunity defense, *Brockington* certainly comes close: Under *Brockington*, it is clear that even a police officer who has just survived a harrowing encounter that necessitated the use of deadly force to extricate himself may not continue to use

22

deadly force once he has reason to know that his would-be assailant is lying on the ground wounded and unarmed. This is not a case, in other words, in which an officer would be required to reason backward from case law 'at a high level of generality' to determine whether his conduct violated a constitutional right. Here, 'pre-existing law makes the unlawfulness' of the conduct in question — as alleged by [plaintiff], and drawing all reasonable inferences in [plaintiff's] favor — 'apparent.'

*Harris*, 927 F.3d at 281 (citations omitted). Even though the force used here was not deadly force, the principle remains the same: using the same level of force after an exigency has passed, and not adjusting the level of force to what would be appropriate, has been established to be unreasonable and not covered by qualified immunity since 2005, sixteen years before the incident in this case.

Defendants-Appellees are not entitled to qualified immunity in this case.

## IV.     THE COUNT ALLEGING VIOLATIONS OF MR. GARDNER'S FIRST AMENDMENT RIGHTS (COUNT VII) SURVIVES SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE DISPUTES OF MATERIAL FACT.

The First Amendment safeguards the right to speak. This right is "one of the most precious of the liberties safeguarded by the Bill of Rights." *Lozeman v. City of Rivera Beach,* 138 S. Ct. 1945, 1954-55 (2018); *BE&K Constr. Co. v. NLRB, 5*36 U.S. 516, 524 (2002). To establish an actionable, First Amendment injury, a plaintiff must prove: (1) the speech at issue must be constitutionally protected; (2) the defendant must engage adverse action; and (3) there must be a causal link between the adverse action and protected speech. *See Suarez Corp. Indus. v. McGraw*, 202

F.3d 676, 686 (4th Cir. 2000). The First Amendment establishes a prohibition against government retaliation for a citizen engaging in protected speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

In Virginia, "[a] person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he, … in any street, public building, or while in a public place, engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed." Va. Code Ann. § 18.2-415. "The requirement that the defendant's actions or behavior, in order to constitute disorderly conduct, must have 'a direct tendency to cause acts of violence' is dictated by concern for First Amendment free speech protections…." *Ford v. City of Newport News*, 23 Va. App. 137, 143 (1996). Indeed, the U.S. Supreme Court has stated that:

> The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. 'Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'

*Houston v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S. Ct. 894, 93 L. Ed. 1131 (1949)).

In *Ford v. City of Newport News,* the Virginia Court of Appeals held that, where a police officer "did not have reason to believe that the defendant's conduct would provoke a violent response from the person or persons at whom such conduct

was directed," the words uttered "however offensive or rude, do not establish disorderly conduct."[2] In *Ford v. City of Newport News,* 23 Va. App. 137, 144 (1996). Although the person accused of disorderly conduct "'[threw] his arms about in the air' and was 'loud and boisterous,' he made no threatening remarks, uttered no words that would reasonably incite a breach of the peace, [and] made no threatening movements...." *Id.* "While the defendant's remarks lacked civility and were impolite, loud, and persistent ... his act of throwing his arms in the air could in no reasonable way cause or incite ... violence." *Id.* As such, the "officer had no probable cause to arrest Ford for disorderly conduct...." *Id.* at 145.

*First*, Mr. Gardner's speech was protected. Mr. Gardner's actions were remarkably similar to the defendant in *Ford.* The words uttered by both were "offensive or rude," he threw "his arms about in the air' and was 'loud and boisterous,'" but "he made no threatening remarks, uttered no words that would reasonably incite a breach of the peace, [and] made no threatening movements...." *See id.* at 144. While his words may have "lacked civility and were impolite, loud,

---

[2] In *Ford v. City of Newport News*, the defendant was accused of violating the Newport News City Code, but the provision is remarkably similar to the current Virginia state statute: "[a] person is guilty of disorderly conduct and a misdemeanor if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person ... engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed...." *Ford*, 23 Va. App. at 142-43. In all relevant respects, the Code is the same as the current Virginia state statue, and thus the case is instructive.

and persistent … his act of throwing his arms in the air could in no reasonable way cause or incite … violence." *See id.* Finally, there was no reason to believe that his words would provoke violence in the store manager, and in fact she barely reacted to his words. JA550, at 1:35-1:42. As such, there was no probable cause to arrest Mr. Gardner for disorderly conduct. Instead, his speech was protected by the First Amendment.

*Second,* Defendants-Appellees adversely affected Mr. Gardner's First Amendment Rights to free speech when they arrested him.

*Third,* there clearly is a causal link between the protected speech and the arrest. The stated reason for the arrest was disorderly conduct. As Armel approached Mr. Gardner, he said, "disorderly conduct, right?" No other reason was stated.[3] Because Momon and Armel retaliated against Mr. Gardner for exercising his First Amendment rights to free speech by attempting to arrest him, Mr. Gardner has established a violation of his rights.

---

[3] Defendants-Appellees argued that they had probable cause to arrest Mr. Gardner for disorderly conduct, but "[p]robable cause also existed to arrest the Plaintiff for trespassing and for assault and battery." JA179. This is unavailing. Defendants-Appellees announced that they were arresting Mr. Gardner for disorderly conduct, never suggested arresting him for trespassing, and never charged him with trespass. Indeed, when they told Mr. Gardner that the store wanted him banned, he acquiesced. He was checking out his items and then questioned the authority of the store manager to ban him, but he did not refuse to leave at any time. As for assault and battery, that allegedly happened *after* Defendants-Appellees rushed to arrest him Mr. Gardner, and therefore could not provide the reason for his arrest.

Moreover, Momon and Armel are not entitled to qualified immunity for their violations of Mr. Gardner's First Amendment Claims. The First Amendment has been established since the creation of the Constitution, and this Court has time and again supported it. It is one of the most widely known, if not the most widely known, protections found in the Constitution. It clearly was firmly established and would have put Momon and Armel on notice that their conduct would be a constitutional violation.

Taking the facts most favorable to Mr. Gardner and drawing all reasonable inferences therefrom, Count VII withstands summary judgment.

## V.     MR. GARDNER'S STATE LAW CLAIMS (COUNTS II, VIII, AND IX) WITHSTAND SUMMARY JUDGMENT

Mr. Gardner's state law claims for battery (Count II), intentional infliction of emotional distress (Count VIII), and gross negligence (Count IX) all survive summary judgment.

### A.     Mr. Gardner's claim for battery (Count II) survives summary judgment because there are genuine disputes of material fact.

Virginia law states that "[a] battery is an unlawful touching of another…. Whether a touching is a battery depends on the intent of the actor, not on the force applied." *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000); *see also Blankenship v. Commonwealth*, 71 Va. App. 608, 620 (2020) (Battery can be proven by establishing a willful touching or another.). Intent is often proven by

"[c]ircumstantial evidence … [which] may include the conduct and statements of the alleged offender, and 'the finder of fact may infer that [he] intends the natural and probable consequences of his acts.'" *Id.* at 471.

Here, Mr. Gardner alleges that Momon battered him by, *inter alia,* punching him in the face multiple times and by kneeling on his legs, and that Armel battered him by moving his hand out of the way and holding him down so that Momon could punch him in the face. Defendants-Appellees claim that "Plaintiff's state law battery claim must be dismissed for the same reasons that his Section 1983 use of force claim must be dismissed…." Since Mr. Gardner's Section 1983 use of force claim withstands summary judgment, so does his state law claim for battery, and Defendants-Appellees do not argue otherwise.[4]

Mr. Gardner argues that the question of whether Momon and Armel battered him is a question for the jury. Momon and Armel claimed that Mr. Gardner was resisting arrest and that the force used was reasonable. Mr. Gardner claimed that Momon and Armel battered him unreasonably and in retaliation. To support this, Mr. Gardner pointed to the statements that Momon made during and after he punched Mr. Gardner. As noted above, Momon said, "you [inaudible] me in the face? Huh?" while he hit Mr. Gardner the first time, and said "you [inaudible] me in

---

[4] Defendants-Appellee's argument is that Mr. Gardner's state law battery claim fails for the same reasons as his federal law claims. Thus, because his federal law claims should have withstood summary judgment, so too should his state law battery claim.

the face? What the fuck is wrong with you? What the fuck is wrong with you?" while he hit Mr. Gardner the second time. JA550, 2:00-2:12. Mr. Gardner was held down by Momon and Armel, virtually unable to move, and said, "how are you going to hit me, I'm on the fucking [ground]," just before Momon punched him in the face the second time. *Id.* Later, outside the Shoppers, Momon said, "he hit me in the face, I'm like, no, not the face. Nope. Nope. Nope." JA550, 14:28-14:40. A couple of minutes later, Momon said, "I'm a fighter, man…. [Mr. Gardner] was on the ground…. He was hitting me and I was like, oh, Mo'fucker, you hitting me? Bam! Move your fucking hand. Bam!" JA550, 14:28-14:40. Mr. Gardner argues that Momon's statements are evidence of his intent – that he was striking Mr. Gardner in retaliation for his belief that Momon had struck him, and not to get Mr. Gardner under control in order to arrest him. *See Adams*, 33 Va. App. At 468 (In Virginia, intent is the deciding factor when determining whether a touching is a battery.) Taking the facts in the light most favorable to Mr. Gardner, Momon and Armel battered Mr. Gardner. At the very least, this is a question for the jury – whether Momon struck Mr. Gardner to get him under control, as he claimed, or whether Momon struck Mr. Gardner in retaliation, as Mr. Gardner claims. Clearly, if Momon struck Mr. Gardner in retaliation, that is battery, and not protected conduct.

**B. Mr. Gardner's claim for intentional infliction of emotional distress (Count VIII) survives summary judgment because there is a genuine dispute over whether Mr. Gardner was resisting arrest at the time Momon struck him.**

Again, Defendants-Appellees claimed that Mr. Gardner's claim should be dismissed because "the conduct that Officers Momon and Armel engaged in during the incident was reasonable and in response to the Plaintiff's violent assaultive behavior and his continued active and aggressive resistance to being arrested and restrained in handcuffs and a RIPP Hobble." JA181. Because Mr. Gardner has shown that he was not continuing to resist arrest at the time that Momon struck him in vengeance, and because Mr. Gardner has shown that Momon's actions were not protected, Count VIII withstands summary judgment. *See supra.*

**C. Mr. Gardner's gross negligence claim (Count IX) survives summary judgment because the question of whether Momon and Armel used excessive force is a jury question.**

Because it is a jury question whether Momon and Armel used excessive force, Mr. Gardner's gross negligence claim survives summary judgment. Defendants-Appellee's entire argument on this claim consisted of two sentences, claiming that *if* Momon and Armel used reasonable force, then Mr. Gardner's gross negligence claim fails. Conversely, since Mr. Gardner has shown that Momon and Armel used excessive force, or at the least that it is a question for the jury whether they did, his claim for gross negligence survives summary judgment.

## VI. COUNT I AGAINST THE COUNTY WITHSTANDS SUMMARY JUDGMENT BECAUSE MR. GARDNER HAS ESTABLISHED THAT THE COUNTY'S CUSTOMS COMMANDED A CONSTITUTIONAL VIOLATION.

Mr. Gardner has shown sufficient facts that, when taken in the light most favorable to the plaintiff (*i.e.,* the non-moving party), his claim for Count I against the County survives summary judgment. By its history of unchecked abuse by police officers, and its history of not properly investigating officer misconduct (including specifically not investigating use of force misconduct and not disciplining officers for violating department regulations and policies), the County has created an informal, nonwritten custom and culture wherein police officers know that they will not be investigated or punished for using excessive force. That knowledge was the moving force behind Momon's and Armel's misconduct, specifically the use of excessive force which violated Mr. Gardner's constitutional rights. The County's historic failure to discipline officers was known to Momon and Armel, and their colleagues, when they battered Mr. Gardner. As they expected, they were not punished. In 2019-21, the County's police force had 505-594 use of force incidents per year, and only one of the investigations during these years resulted in sustained violations. Momon and Armel were aware of this historic failure to discipline officers. Indeed, Momon had 64 complaints lodged against him, and only one resulted in discipline. Finally, Mr. Gardner notes that persons of African American

descent, such as himself, make up a disproportionate number of the cases wherein force was used.

It is crucial to note that the police officers on the scene were laughing and joking about the battery of Mr. Gardner. Momon bragged to other police officers, "I'm a fighter, man…. [Mr. Gardner] was on the ground…. He was hitting me and I was like, oh, Mo'fucker, you hitting me? Bam! Move your fucking hand. Bam!" Momon explained his motivation to other police officers, saying, "he hit me in the face, I'm like, no, not the face. Nope. Nope. Nope." JA550, at 11:48-11:53, 14:24-14:45. The police officers' demeanor, the way that they joked about hitting Mr. Gardner, and the way that they openly discussed the incident with no fear of reprisal or concern, illustrates Mr. Gardner's point that the County had created a custom and culture wherein police officers know that they will not be punished for battering arrestees. *Id.*

Mr. Gardner's expert Dr. Goerge Kirkham, stated that "both defendant officers made no apparent attempt to deactivate or turn off their BWC from the time they arrived at Shopper's Food Store until they left – even though their cameras were recording serious acts of misconduct in the form of abusive language and excessive force inflicted on the plaintiff." JA443. "The BWC recordings which were preserved during this incident provide clear and compelling evidence that neither of the two involved officers appears to have had any concern about the fact that their shocking

misconduct (both verbal and physical) was being recorded by their BWCs; indeed, both Officer Armel and Officer Momon speak and joke openly and freely with a number of other paramedics who showed up at the scene about their actions while their BWCs were still running." *Id.* "Both Officer Momon and his 'rookie' were confident that even if a complaint was filed against them in connection with this incident, supervisors would not retrieve and review the BWC evidence; or if they did, they would ignore the outrageous violations of both the law and determent regulations that the BWCs contained." *Id.* Dr. Kirkham's conclusion is that "[t]he fact that nothing was ever done with this highly inculpatory evidence of officer misconduct leads inexorably to the conclusion that the **Fairfax County Police Department General Order #540** on "**De-Escalation**" and "**Excessive force**" has become a nullity that has been replaced by a de-facto custom and practice allowing members of the department to engage in the kind of delinquent behavior exhibited by these two officers with impunity; and confers tacit approval by the Fairfax County Police Department." *Id.* at 443-444. (emphasis in original).

Momon's statements to other police officers at the scene comports with this conclusion. Outside the Shoppers, Momon related to other officers, "he hit me in the face, I'm like, no, not the face. Nope. Nope. Nope." A couple of minutes later, Momon said, "I'm a fighter, man…. [Mr. Gardner] was on the ground…. He was hitting me and I was like, oh, Mo'fucker, you hitting me? Bam! Move your fucking

hand. Bam!" JA550, at 14:28-14:40. This bragging about battering Mr. Gardner to other officers and first responders, and with his body worn camera recording it, shows that the County has a "de-facto custom and practice allowing members of the department" to engage "with impunity" in behavior such as the behavior at bar. The County confers tacit approval of such behavior.

Taking the facts in the light most favorable to Mr. Gardner, and drawing all reasonable conclusions, Mr. Gardner has shown a custom and practice of the County sufficient to make it responsible for Momon and Armel's behavior. At the very least, it is a question for the jury that is not appropriate for summary judgment.

Count I against the County survives summary judgment.

## CONCLUSION

For the above stated reasons, this Honorable Court should reverse the district court's Opinion granting summary judgment in favor of the Defendants-Appellees and remand the case for trial.

Plaintiff-Appellee respectfully requests oral argument.

ANTHONY LAMONT GARDNER, JR.

By: /s/Donna L. Biderman
Donna L. Biderman, Esq. (VSB 40818)
LAW OFFICE OF DONNA L. BIDERMAN, PLLC
4015 Chain Bridge Road, Suite 38
Fairfax, Virginia 22030
Telephone: (703) 966-5434
Facsimile: (888) 450-8569
dbiderman@bidermanlaw.com
*Plaintiff-Appellant Anthony Lamont Gardner, Jr.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains less than 13,000 words, specifically 8682 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using a proportionally spaced typeface using Microsoft Word 2003 in 14-point, Times New Roman font.


_____/s/_____
Donna L. Biderman


## CERTIFICATE OF SERVICE

I have this 14th November, 2024, electronically filed the foregoing Brief with the Clerk of the Court using the CM/ECF system, which will cause the required copies to be served upon all counsel of record.


_____/s/_____
Donna L. Biderman